So with that, let's move to our first argued case today, which is number 21-616, Silva v. Farrish, Mr. Moore. Good morning, Your Honor. Thank you for your support. My name is Scott Moore, here on behalf of the appellants, the three appellant members of the Shadcock Indian Nation. This case was filed as a use case, a fishing rights use case. The complaint read plainly, clearly says that it pertained to fishing rights. It uses the words, use of property fishing rights in paragraph 22 and count 1. It refers to interference with fishing rights, for example, in paragraph 16 of A-19. Plaintiffs are in fear of exercising those same usual and customary, aboriginal fishing rights secured and obtained for them by their ancestors. The reliefs, declaratory judgment, paragraph 1 in the relief, A-22, differ to shield them from otherwise interfering with plaintiffs' use of the waters, fishing, taking fish. So sorry, Mr. Moore, so your argument here, that's relevant because you're saying you're not seeking transfer of title to land or anything. You're seeking interference with legal rights. Oh, but you're seeking an impediment upon the State's title, aren't you? No. Why not? Because fishing rights, as stated in the complaint and as acknowledged in C.P. 42, refers to activities, use. Well, the right to, but the State, if someone's not a Shinnecock Indian, they're subject to the State's sovereign right to control the fishery within State land, over the State, on waters that are over State land. Is that not the case? Yes. Then how is this not an impediment of that right? Well, it's an impediment of interference with the Shinnecock use of the waters. There's no claim of soil. There's no claim of... It's no different than an easement over land. Someone walks across a parcel, has an easement across the land, that's an impediment to title. This is an impediment to the State's sovereign right to control its waterways. No, you're right. This is not analogous to an easement. These fishing rights are secured for a time immemorial. Well, sure. I guess, Mr. Moore, maybe we can take an analogy. I guess maybe you might say that whenever you seek to enjoin executive action that you think is unlawful, it is going to interfere with the State's regulatory authority, right? So if the State had a public park and they prohibited people from having protests or demonstrations in that park, and somebody sued to say that was a violation of the First Amendment, I suppose that means they're saying that the State can't, in fact, regulate speech within the public park. But that's not the same thing as transferring title of the park, right? That's right. And so you would say that what you're doing here is analogous to that, that you have a right, like the First Amendment right, but here you're saying it's an aboriginal right to the fish, and the State is interfering with that right and you're just seeking to enjoin their interference. But it's not of a constitutional nature. It's of a property right. It's a property right. Well, actually, is it a property right? I mean, so you say you have a right to the use of the fish, but you don't actually say that you own all the fish or can exclude others from fishing, just that you have the right to fish, right? That's correct. It's currently in use. Like you don't claim that you could exclude anybody else from the waters of the Shinnecott Bay. No, I don't. You just think the State can't prevent you from fishing. Yes. Well, the fact that it's not exclusive doesn't – that doesn't impair the fact that it's particular to you or that it's of the nature of a property right. You have the right to take the fish and keep them and sell them commercially, do you not? Yes. Do you own the fish once you've caught them? Yes. Okay. All right. So your right has property rights implications to it then, doesn't it? Well, fish are transitory, Your Honor, and as recognized in the colonial deeds which the state constitution acknowledges, the state is bound to the colonial agreements that were struck. And those documents showed by Dr. Strong in his report show that those – since time immemorial, the Shinnecott did chase the fish wherever they were caught. They were transitory. All right. Can I ask you other questions? So for the relief that you're seeking to enjoin, the enforcement action against Silva and Southampton, that's over now, right? Yes, Your Honor. Does that mean that your request is moot? It is moot as far as Silva's prosecution goes. It's done and that was concluded, although there was no pending proceeding at the time of the decision. Right. So does that mean that your – like there's nothing left for the government to do, and so that particular request for injunctive relief like it's now doesn't matter because there's nothing left to enjoin. Is that right? So you don't have – you're not seeking to enjoin other future prosecutions or anything else. Is that correct? Could you restate that? So you were seeking to enjoin the enforcement against Silva in that particular case. That particular case is now over. That means that that request for relief is now moot. That's correct. Okay. And then can I ask – There's a future prosecution. Future what? You want a declaration that Silva can do it again. Well, that would be your larger request for declaratory relief. I understand that. But I don't see any allegation that your clients intend to continue fishing and – while fishing, taking elvers or immature eels or taking yield in excess of what the state allows or otherwise fish in violation of the law. I don't see an allegation you intend to do that. Well, in paragraph 16, there's the – You want to tell me the page you're reading from? A-19. Thank you. The plaintiffs are in fear of exercising those same usual and customary efforts of fishing rights secured and retained for them by their ancestors. Once bitten is quite shy. Each of these opponents have been prosecuted. So you're relying on chilling effect. Yes. Isn't that usually sort of First Amendment stuff? Well, in the area of aboriginal fishing rights, if these opponents trying to exercise their rights and were stopped and prosecuted, there's the chilling effect. Are your clients fishing now? Do they fish in Shinnecock Bay? They're afraid to. No. But they still live in Shinnecock Bay, and you're saying they would fish but for the licensing requirement the state is imposing. Is that right? Yes. But there's nothing that stops a member of that tribe any more than anybody else from fishing in Shinnecock Bay. But they just can't take in excess of the yield that is permitted by law, and they can't take immature eels and fish. Well, that's not correct, Your Honor. If the appellants try to do the same thing— What do you mean by the same thing? You mean— Fish without a state license. Well, why can't they get a license? Well, they have a right to fish without impediment of the state interference. So basically you're saying they're chilled from getting a license. Well, they're chilled from exercising their rights, which Dr. Strong laid out in his report. Okay. And those reports are— Well, your claim is that they have a right to fish without a license. Yes. And that hasn't been determined on the merits, but that's your claim. That's the allegation. Yes. And they would do that but for the fact that the state is threatening them. Right? Well, they would— Now, you have allegations in your complaint that say that your clients are deterred from fishing. Yes. But you didn't submit an affidavit or anything, a summary judgment, that said that we have—that we were going to fish. I mean, did you need to do that? Well, there was no discovery. In the case, it was—there was an initial motion to dismiss. It was converted to summary judgment, and there was no discovery. That was stayed right at the office. So then are you saying that you didn't have an opportunity to submit such an affidavit? Yes. If you had such an opportunity, would you submit an affidavit from your clients that said we intend to fish again in Shinnecock Bay? Did you ask the district court for the opportunity to do that? Well, the district court did have sustained discovery. But did you—was your defense against the summary judgment motion that there should be additional discovery and certainly this issue of a continuation of his desire to fish was important? Well, there was no— It's a simple question. Did you ask the district court to do that, to allow that? Would you read the state, sir? Did you ask the district court for an opportunity to continue discovery with regard to your client's desire to continue to fish in Shinnecock Bay? No, Your Honor. Well, then how can you complain here about something you didn't ask the district court to do? Seems a little late, doesn't it? Well, did you have the opportunity to do that? So my reading of the summary judgment briefs was that the government had argued that there wasn't a likelihood that your clients would be prosecuted again,  and then the magistrate judge, in the opinion for the report and recommendation for the first time, said that there wasn't any evidence that your clients intended to fish. Had the argument been raised before then? I don't know how to answer that, Judge, because they had been prosecuted when they attempted to exercise their rights, and that stopped them, their cultural and spiritual background, like 400 years ago. Yeah, that's a fair point, right? So you say in your complaint that you have, that the Shinnecock have this long tradition of fishing, that your clients have fished and that they were arrested and they're being deterred from fishing now because of the former ticketing and prosecution activity. Is that enough? Like, is that enough? Should we use your argument that that would be enough of a statement from the plaintiffs that they intend to fish in the future? Well, yes, on the base of the document, but it was a surprise, frankly, that there would be a question as to, they would not be submitting evidence in addition to... Right, so all that they would have, all you would do is submit an affidavit saying, we intend to fish, and that's what you've already done in the complaint is your... Yes. Right. Is it the intention to fish and to take immature eels? Is it the intent to fish and take in excess of what is the permitted yield? Yes.  I can't tell what you're seeking here, and if the plaintiff doesn't say what they're looking for, it's difficult for me to decide whether you're entitled to have it. Well, in each of the previous prosecutions, there were all different kinds of fish in each of these, and they're all used, they're licensed for requirements. They're different kinds of fish. They're maybe out of season according to the state. They may be over the limit in the eyes of the state. These are all males of a nature. So I could give an affidavit in five minutes, a general intent to fish for whatever they have a history of fishing for, and I could include specific kinds of fish. But you think it's reasonable on the face of the record to just understand that they want to do the thing that they did before and were prosecuted for? Well, yes, just on the record as well. The prosecutions show the different kinds of fish and the uses, and they would keep doing it but for these prosecutions. Okay. Can I ask one last question, which is you don't seem to make any arguments on appeal about the grant of summary judgment for the district attorney defendants. Are you not pursuing a challenge to that grant of summary judgment for them? Only to the extent that we put it in the brief as far as the discrimination. And the county is the arm of prosecuting the appellants, so only to the extent that's in our briefs and that they are the prosecution. Okay. I think I understand that. That is implementing the state policy. But if you were to prevail against the state defendants, probably it wouldn't matter anyway, but I understand your point that it's only to the extent that it's in the briefs. Okay. Well, you've reserved some time for rebuttal, so we'll hear from you again. Let's turn to the first appellee, Ms. Brody. Ms. Brody. Good morning, Your Honors. Elizabeth Brody with the state appellate. This court may affirm the district court's grant of summary judgment on count one on three threshold grounds. First, Mr. Silva's claims are barred by Younger v. Carrick. Second, none of the plaintiffs have shown that he has standing. And third, the state defendants are immune under the appellant amendment. So can I ask this? So Younger abstention, I mean, as we just determined, the state prosecution is done. So what proceeding would we be interfering with if we abstained from deciding this question, this case? Certainly the state has no objection to this court's affirming grant of summary judgment on these grounds. But we would argue that the proceeding is ongoing within the meaning of Younger because Mr. Silva abandoned his state court appeal. And one cannot evade Younger simply by deciding a state court appeal issue. Why not? If the whole point of Younger is for – to respect comedy between the federal and state courts, not interfere with state court proceedings. If a defendant in a state court proceeding doesn't appeal, and so the prosecution is over and the state has vindicated whatever interest it has, why should we act as if the state proceeding is ongoing in perpetuity? It's not an exhaustion requirement, right? It's a question about whether the federal courts should interfere with the state proceeding. The state no longer has an interest in the prosecution. This court has held that it is an exhaustion requirement. We've said that Younger abstention is an exhaustion requirement? That Younger abstention is designed to force state defendants to exhaust all state proceedings? Haven't we said – haven't we said that we are going to abstain as long as the appellate proceedings are unexhausted, meaning like if there's still an appeal pending, we're not going to determine that the state court proceedings are done. But here there's no appeal pending. I mean it's finished, right? The state court proceedings have reached their end. That's correct, Your Honor, but this court has also held that principles of comedy require that Younger is not available to an appellant who chooses not to take advantage of the state appeal simply because he believes his chances are not auspicious on appeal. So this proceeding is ongoing. And the citation provided is anonymously associated with the Bar of the City of New York. Can I ask you about the 11th Amendment question as well? Well, so maybe I can make the same analogy that I made to opposing counsel, which is whenever somebody is suing the state to enjoin a law or a practice or enforcement they think is unlawful, so let's say you have my scenario where the state is prohibiting protests in a public park and somebody seeks to enjoin the enforcement of that law on the grounds of the First Amendment. It's true what they're doing is they're going to say effectively that the state doesn't have regulatory authority over its own park. But it's not transferring title of the park, right? It's just saying you can't do – you can't act in excess of your authority because your authority is limited by the Constitution. And so here the plaintiffs want to fish. They say they have a right to fish. And so they say, well, the state has regulatory authority over fishing, but just not to interfere with a legal right that we have to fish, which limits the state's authority. Why is that any different from any normal ex parte young case where we're seeking to join – they're seeking to enjoin unlawful government action? We're not expanding – we're not seeking, excuse me, to expand the court of legal doctrine or the Western legal doctrine to all ex parte young cases, which, as you point out, certainly to some extent limit the state's authority. But here, as Judge Wesley said, this is an impediment to the state's title. And I would point the court to a – Title to what? To the fish? To the state's right to regulate wildlife within its borders because here what the plaintiffs are seeking is an unlimited right to fish in what they claim is an area of aboriginal use of ruptured fishing rights. So they say that the state has no authority to regulate, even using neutral regulation, even in the interest of conservation. They have no right – I mean, so do you dispute – I mean, if in fact there were a treaty – like, I understand that you dispute the merits question, but if in fact there were a treaty that gave them rights to fish with which the state was not allowed to interfere, you're saying there's no way for them to sue over that because the 11th Amendment would bar any such suit? So like the state of New York could agree with the Shinnecock and say, you have unlimited rights to fish and we promise we will not interfere with those rights and sign a treaty. But then if the state of New York violates the treaty, there would be no way for the Shinnecock to sue to vindicate their rights. That's not really what's happening here. They're alleging that they have a treaty right that was signed in the 17th century for unlimited fishing rights. And what the U.S. Supreme Court has held that even in treaties where there is language granting use of ruptured fishing rights, those rights are still subject to the conservation necessity doctrine. So the state may even handedly regulate. Okay, but that's a merits question, right? That means that they wouldn't prevail on the merits because you have those rights that override the treaty terms. But you're saying at the threshold they can't even get into court to reach that question. Your Honor, what they're seeking here, though, is a spatially unlimited right. And what they're actually alleging, if Your Honor is looking at the summary judgment papers, is that the tribe never ceded title to the Shinnecock Bay. So like Western Okegan, their claim is tied intimately to a claim of title. With regard to the land, that's their essence. Their claim is that they still have a right to the land underneath the water, and therefore they acquire the use of factory rights. It's a property concept. It's not a First Amendment issue. It's a question of who owns the right to fish, and they say they reserve that right. The state may be sovereign with regard to others who aren't members of the Shinnecock Nation. But this is something that has – it's in the chain of title with regard to what they gave up or didn't give up. Is it possible to have the use of factory right that does not require a transfer of title to the underlying land? Yes, absolutely. That was the case in Hill Locks, the Supreme Court case. So then does your argument depend on the idea that here they're not simply seeking a use of factory right but also seeking title to the underlying land? Well, they gave up the land, but they reserved the right. It's akin to an easement, as Judge Wesley said. Well, if in fact, as Judge Wesley said, they gave up the land but kept a use right to use the fish, then we are talking about a scenario where they don't want title to the land and don't rely on title to the land but just want the use of the fish, right? In cases where tribes or tribal members have sought rights within the ex parte, the absence that you're describing, they've sought basic rights. They've sought to fish, for example, in state public lands without a license. But here members of the Shinnecock Indian Nation can fish off of the reservation. On page 14 of our brief, we mention a regulation saying that they do not have to pay for recreational fishing licenses in season. They undeniably already have a basic use of factory fishing right. They can even fish for eels. They can catch up to 25 eels per person per day. Now, if the state started denying them that right, could they sue to vindicate it? The basic right to fish? Yes. Yes. However, if your Honor is looking at their complaint, especially if there's summary judgment papers, what they want here is an unlimited right to take baby eels. So you're saying the 11th Amendment would not be a bar for them suing to vindicate their basic right to fish, but when they request an unlimited right to fish, the 11th Amendment kicks in and doesn't allow the suit. Why would that be? What in the 11th Amendment makes that distinction? I'm sorry? No, go ahead. The 11th Amendment cases, including Brian from Maryland, say that the courts looked to the effect of the relief sought. And here the effect of the relief sought would be that the state is enjoined from enforcing any fishing regulations, again, including mutual regulations that do not discriminate against any fish. Okay. So the effect of the relief sought would be the state would be enjoined from enforcing fishing regulations. It would not, in fact, require the state to treat any land as belonging to the Shinnecock, right? It would require the state to exercise its title over the land subject to the rights of Shinnecock. So it would be... Right. It would still have title over the land, but it wouldn't be able to interfere with the fishing rights by enforcing the regulations that the Shinnecock alleged are unlawful. That's right. Okay. Can I ask about the standing question? So you say in your brief on page 15, plaintiffs each fish in the Shinnecock Bay and its estuary and have each been ticketed and subsequently prosecuted in Southampton Town Justice Court for violating state laws and so on. So it seems like in your brief you recognize that they fish. They're fishermen, right? So how could it be speculative that they want to fish again and are prevented from doing so by the licensing requirement? It's plaintiff's burden to establish that they're at risk of an actual or imminent injury, and they allege that that injury is the state's exercise of its regulatory authority to ban glass eel fishing. There is nothing at all in the record to suggest that they would be subject to some kind of unlawful or unconstitutional prosecution by the state. You know, in these cases where we say that it's speculative as to whether you'd be prosecuted again or you'd have an encounter with law enforcement, like usually we have cases where somebody's pulled over and maybe the police use excessive force or there's some kind of an incident, and we often say it's speculative as to whether that will happen again because, you know, whether that kind of an encounter would happen again is speculative to some extent. But here they went fishing in Chinnokok Bay. The state prosecuted them and said, you need a license for this, right? That licensing requirement is ongoing, right? So is it speculative as to whether they would need a license if they wanted to do the same conduct they had done before? Like your position is not that it might be they won't be subject to the licensing requirement, right? They are subject to the licensing requirement. You don't dispute that. There is nothing in the record that if they were following the mutually applicable fishing regulations applicable to all the records. Oh, I see. So your argument is that if they abide by the rules that they allege to be unlawful, they won't be prosecuted. That's correct. But their claim is that those rules are unlawful, right, that that's their injury, right? So is it speculative that if they violated the rules that they would be prosecuted? How many times did Mr. Smith attempt to fish? Once, right? Mr. Gerald Smith. And Mr. Jonathan Smith. Each once. Jonathan Smith, it was an unlawful aquaculture operation. How long ago was that? Goodness, at least eight years. I think he was ticketed ten years before the complaint was filed. And his prosecution was long since over. Was there any allegation that he had continued again to try and had been prevented from doing so? No. Is he required to do that? He's required to violate the law? Answer the question, please. I asked her a question. Would you answer the question, please? Would you mind repeating your question? Had he attempted to do so since that ten years ago? No, he has not. Did he assert that he tried to do so but was in fear that he would be prosecuted? No, he didn't, and he also did not ask. Wait, I'm sorry, but doesn't the complaint say exactly that, that he wants to do so but is in fear that he'd be prosecuted? Being chilled is not adequate when a plaintiff is seeking prospective injunctive relief nor an allegation of past injury. I would just like to briefly return to a procedural point that was discussed earlier. None of the plaintiffs moved to the district court for permission to submit any kind of affidavit. This was very standard when plaintiffs are trying to establish standing, particularly somebody judging them and saying, I intend to fish. I have bottled these nets. I have bottled this equipment. I'm going to fish for glasses in the upcoming fishing season. This is very, very easy to do. They say there was no discovery, but that information was not in the state's possession. That was in their possession. And I will point out that they shared discovery materials with another tribe, the Amsterdam tribe, in an ongoing case and submitted a very voluminous summary judgment record. In fact, when the briefing was done, they even moved to submit additional exhibits, but none of the exhibits they submitted, nothing they submitted in summary judgment, was a very simple affidavit saying, I intend to engage again in glass eel fishing. And the only thing in the record that could possibly suggest that they were going to do it again are these very, very old prosecutions, two of which are not even for glass eels. But what about the complaint that says that they want to do it, but they're not doing it because of the prosecutions? Like if you were prosecuted, if you were prosecuted like they were, would you turn around the next day and go back to fishing? It's not sufficient under this Supreme Court case law to simply say that an injury in the past has chilled prospective conduct, perhaps only in the First Amendment context, but again, they're not bringing a First Amendment claim here. And this Court has consistently abided by the requirement that for prospective conjunctive relief, the plaintiffs have to submit some concrete plan. So then it wouldn't be enough if they submitted an affidavit that said we want to fish again. You're saying they would have to say we plan to fish on this specific date in this boat and catch these fish, right? Is that right? Sorry, so then why don't you tell me what they would have to do to establish standing? This is a motion for summary judgment that establishes the genuine issue of material facts that they are intending to fish for black seals. Or for excess of permitted yield. And that they intend to do so without getting a license that is free. Basically, however, no New Yorker, native or non-native, can catch black seals. No New Yorker, native or non-native, can catch seals below 9 inches. We're talking about what they have to indicate in order to establish standing. An intent to fish. All New Yorkers can fish. They have an intent to fish. Good. That doesn't mean that they need to have a declaration or an injunction. But if they said that they intended to fish without getting a free license, and that they intend to take eels beyond the permitted volume, and that they intend to take immature eels, and that was plausibly alleged, then you can see they would have standing. Correct. I would just like to clarify that even if you have a recreational fishing license or a commercial food fishing license, you cannot fish for eels under 9 inches. You can't fish for black seals in any event. I understand. Yeah, but under their theory, they could, right? Under their theory, any regulation by the state of New York of any fishing rights is invalid because they have a professional, unlimited easement to fish in New York state waters. Right. Okay. Ms. Brody, thank you. We'll turn to the other appellee. Mr. Mitchell. Good morning, Your Honor. May it please the Court. My name is Brian Mitchell. I'm an assistant county attorney at Suffolk County.  Your Honor, just in response to the question that you asked the Flanker's counsel about whether the arguments here against ADA Greenwood are moot or no longer valid, his response was only to the extent that it's in the brief. Quite frankly, there's nothing in the brief. The brief is silent about any allegations or any arguments regarding the decision below to grant summary judgment to ADA Greenwood or to grant summary judgment to, essentially, whether it be the county or the district attorney's office, as that term is used in the complaint. I'll just simply say that ADA Greenwood is entitled to absolute prosecutorial immunity. All the conduct she engaged in was in the function of prosecuting. There's nothing in the complaint. There's nothing in the brief that indicates that she acted in any other way. So our position is that she's clearly entitled to absolute prosecutorial immunity. The standing for that, by the way, was just recently affirmed by this Court last Thursday on March 9th in a case called Amalego Ridge v. Soda. And that's a West Swamp. That's a – and reaffirmed what has been the case law in the circuit for years and years and years. The only other point I'd like to make is that even to the extent that ADA Greenwood wouldn't be entitled to prosecutorial immunity, she acted in her capacity as a prosecutor prosecuting someone based on a valid state statute. So I would argue that she's also entitled to qualified immunity because the law is not clearly established that to prosecute someone under that statute would, in fact, somehow violate their constitutional rights. So you know she's not entitled to prosecutorial immunity, absolute prosecutorial immunity. She shouldn't have been entitled to qualified immunity. Beyond that, if you look to the claim, quote, unquote, against the Suffolk County District Attorney's Office, the Suffolk County District Attorney's Office itself is not an entity that's enabled to be sued. If we look to say, okay, well, Jamie Greenwood's being prosecuted in her official capacity, official capacity claims against the District Attorney's Office are viewed as being against the state. That was recently reaffirmed by this court in the case of Klein v. Zubabi, Z-U-B-A-B-I-E, and that's a 2021 Westlaw 531-3708. That was from November of 2021. So – and obviously, what we're looking at when we look at an official capacity claim, we're looking at whether – it's a Monell claim. The question is who's against. And here, where our argument is any claim against the District Attorney in their official capacity would be against the state. A Monell claim against the state is – A Monell claim is against a municipality, not a state, right? It depends, Your Honor. It depends on what the function of the DA is. And as I mentioned, in the Klein case, this court said that official capacity cases against the District Attorney are considered against the state. In Anelayo, they looked at whether the claim in that case fell within whether the prosecutor was making a decision to prosecute, how they prosecuted the case. And Anelayo found in that instance that the case – the claim – the Monell claim was against – although it was against the District Attorney, it was that the District Attorney acted as a state actor. There's a case from the circuit called Bellamy from 2019 where the court said, well, you know, we've referred back to Bias v. Hanson, which is one of the seven cases on this issue. And Bellamy said, that's not quite as broad a person to argue. And noted that when the DA is making decisions to prosecute and how to prosecute, they act as a state actor. He said, however, in other instances, they could be considered a county actor. Our position in this particular case is that what KBA Greenwood did fell into the conduct of acting as a state actor. Even if the court were to look and say, well, you know what? No, maybe she's acting as a county actor. And so we've got a claim essentially here from the District Attorney in her official capacity as assistant DA, obviously. It's actually a claim against the county, and therefore the plaintiffs essentially argue a Monell claim based on the conduct of the DA, where the county would somehow be liable. Well, even if we look at it that way, in this particular case, there's no evidence in the case at all that what KBA Greenwood did first, there's no evidence that she violated its constitutional rights. She prosecuted someone who was convicted. There's no indication that what she did was violative of its constitutional rights. And secondly, under the concept of Monell, and we look at the – what the pleadings lack and what – there certainly isn't any evidence of the case that any county custom or policy or procedure was the affirmative-length driving force that led KBA Greenwood to engage in the conduct that she did. So even in that instance, even when we look at merits, there's simply no Monell evidence. There's nothing to support a Monell claim against the county. And so beyond that, Your Honor, I have a final argument in my brief, and I just mentioned that under Hecker v. Humphrey, we think this particular claim is also – Because it's a collateral attack. Yes. I think we have that – I think we have that argument from the briefs. Yes. All right. Thank you very much, Mr. Mitchell. Let's turn back to Mr. Moore on rebuttal. Thank you, Your Honor. I want to initially – I want to respond to the concern expressed about chain of title and the distinction between the use of chain of title. In the complaint on page – paragraph 16 of A-19, I read you the first part of that sentence, but let me read you the rest. The plaintiffs are in fear of exercising those same usual and customary aboriginal fishing rights secured and retained for them by their ancestors. And here's the rest. When Shinnecock territory was ceded to the English. So there's – that comment stage shows there's no – So you're saying you ceded the territory – or your argument is you ceded the territory, but you retained rights to fish, either whether you retained them or you were granted them as part of this agreement. You just want rights to fish. Yes, Your Honor. And this is commonly – Can I ask about the standing question? So maybe you could clarify this. Did you have an opportunity to submit an affidavit that just says we intend to fish again for glass eels and you failed to do so? And why – why did you either not need to do so or why were you unable to do so? I did not have an opportunity to submit such an affidavit. Frankly – Did you ask for one? No, Your Honor. Was there – was part of the motion dismissed based on standing? Yes. So you were on notice that they were contending that there was no real – that your people had no real skin in the game. Well, the – Right? It was converted to some rejection. Well, no. Stay with the question. You were on notice that they were contending that your clients did not have – that there wasn't a controversy between you and that you weren't close to it, there was no remedy to give to them because there's no indication that they'd be injured again. No, Your Honor. The discovery was stayed right at the outset of the case. But I asked you clearly if the motion dismissed was predicated on standing, and one of the grounds was standing. You said yes, and when confronted with that, you didn't seek to expand the record to show that your clients were ready, willing, and able to go and fish again, and they wanted to, but they were prevented from doing so because of their fear of being arrested again? No, Your Honor. Well, you have allegations in the complaint about wanting to go fish again, right? So they said that it's a motion to dismiss. You could rely on the allegations in the complaint. So I guess what I want to know is once it was converted to a motion for summary judgment, what was the opportunity to submit an affidavit to substantiate the allegations in the complaint? Right. Well, the allegations in the complaint need to be read in a way that's most favorable to the plaintiffs. They need to be plausible, too, don't they? What was the period of time from Smith's arrest and the completion of his criminal matter to the time of the motion for summary judgment? Some seven years, wasn't it? Approximately. Did Smith assert that he had tried to fish again but had been prevented by DEC? No. Okay. But you did say that, I mean, it is true that the New York State said you're not allowed to do this or we'll prosecute you again, right? That there was an ongoing licensing requirement that prevented him from doing what he wanted to do. Did New York say that to Mr. Smith? Did you assert that New York said that to Mr. Smith? Well, I was with Mr. Smith in the courtroom attending the prosecution, and I can tell you that when you're standing in front of a judge in the trial court with a criminal offense, you're not going to do it again. Okay. So it's the nature of the fact that he was prosecuted eight years before, seven years before, that shows that he still had an interest in the litigation? Yes. Okay. They'd be out fishing tomorrow. They'd be out fishing tomorrow for immature eels. Well, I don't know, Your Honor. And they would not get a free license to do that. And they would want to take more than what's allotted. I mean, you do realize the Shinnecocks may have as much interest as anybody else does in not depleting the population of eels in Shinnecock Bay so that nobody gets to eat any of them, the big ones or the little ones. So it's not obvious that they intend to go out there and do something that would deplete the supply of eels for themselves and for everyone else. No, Your Honor. The state requirements include licensing, price of fish, where you catch them, how you catch them. This net, which you see in the crime scene photo, is a net. Well, which of these things that the state prevents are the things that your clients wish to disregard while they are fishing? Because other people fish, too. They don't necessarily want or need to take immature eels, elvers, I guess. Well, the evidence that the state put forward about what they claim at first, an endangered and threatened species, well, that's been debunked. And they have dropped that claim. That's not true. Which claim? For the assertion, I should say, about live eels being a threatened species, an endangered species. Well, they may not be. But if you take enough of them, they're going to be. Well, the Shinnecock Gap is a cultural and spiritual practice of the Shinnecock. They have just as much an interest as the state in taking care of the natural resources, whether they're whales a distance out from shore or fish, migrating fish. No, I'm sure. I mean, it's pretty obvious that the Shinnecocks have the same interest everybody else does in not depleting the wildlife of the state. It's just that given that, given that, it's hard to assume that if they got an injunction, their intention is to go and take immature eels and to take eels in quantities that exceed the permissible yield. In other words, why should we assume that just because they said they want to go fishing? Do you contest that the licenses are available free to the Shinnecocks? Well, they have a treaty right to fish. Assuming they do, why couldn't the state honor that treaty right by making available free licenses? Why wouldn't that be a sufficient honoring of that right of the Shinnecock Nation? Well, that also would be a merits question, right? Like whether you act there, the state is actually complying with the treaty by providing free licenses, and the district court here didn't reach the merits. That's correct. And back to your question about the method of fishing, or I should suggest the method of fishing. If you look at the crime scene photo in the record, it shows a net, and a net is confiscated. That's a cultural practice using a net. It doesn't necessarily mean in and of itself that it's going to violate or it's going to deflate the fish. It's a practice, and that's a very common Native American practice to use a net. It's also commercial, like it's commercial quantities of fish that they were taking, right? Yes. Thank you. Okay, thank you, Mr. Moore. The case is submitted.